Good morning. May it please the Court, Jonathan Lidby appearing on behalf of Appellant Daniel William. Your Honors, unless the Court has objection, I intend to first address the Batson issue, and if any time remains, then I'll address the Permits of Instruction. Yes, but please do get to the instructional question. I will certainly do my best to do so, Your Honor. With respect to Batson, it's our position that Judge Rio acted arbitrarily and irrationally in granting the government's Batson challenge. The parties agree that under Batson there's a three-step test that must apply. The government raised the challenge. The defense gave race-neutral reasons for the strikes. If you were the defense lawyer in this case, what would you have thought of those? And she was on the other foot. What would you have thought of those race-neutral reasons? Well, I probably wouldn't have liked them. You probably would be here arguing it was a Batson violation. Well, I'm not sure with respect to the fact that he had a daughter who was a sheriff's deputy. That certainly was a race-neutral reason. Well, that wasn't addressed by Judge Rio at all. Well, nothing really was addressed by Judge Rio. Judge Rio gave a very ‑‑ after the explanation was given, he simply said, I don't think those reasons are good reasons, counsel. So it's completely unclear what Judge Rio was thinking. But if somebody got up and said that their race-neutral reason, if a prosecutor said their race-neutral reason was that this person was from a town which was known to be a largely minority town, you didn't want that person because of the town they were from, you would say that's a pretext. We certainly would. Or a proxy. We certainly would. But that's not what defense counsel did here. Defense counsel said that Mr. Mack lived far away from the location where the crime occurred. But she wasn't from the community. Well, actually, she was from Napomo, right? He was from Napomo, yes. And that actually, isn't it about four hours from here? It's close to 200 miles. It's in wine country. How can we even draw jurors from Napomo and expect them to come to trial in the central district downtown? Well, that's right. I mean, the central district obviously is the largest district in the country, geographically speaking, and population-wise. It's a huge district. And it's a very diverse district. It has rural communities and urban communities. And the fact is, what defense counsel said here was that's not close to Inglewood or Hawthorne. And? And? Therefore? Well, that he may not be familiar with what the area is like. And in fact, what now the government has argued, if you look at the jurors who remain, then, well, they're not from Inglewood or Hawthorne. But when you look at where they're, in fact, from, they're, in fact, from very close to Inglewood and Hawthorne. They're from, you know, the valleys, from San Pedro, from Azusa, from Buena Park, from North Hollywood, something. They're from, you could fairly characterize Napomo as quite rural. And these other areas are more city areas. Exactly. And that's, I think, what defense counsel was considering. That's what they meant, that it wasn't explored at all. I mean, it should have been explored so we could have seen what really was behind that statement. Well, exactly. And, of course, the government had the burden of establishing purposeful discrimination here. And all the government said was the initial words during the Batson challenge, which was five males were struck, white males were struck, which, by the way, was not correct. There were four white males that were struck, five total males, three females. One of the males was Asian. One of the females was Asian. All right. Suppose you're right. Then we have the Rivera-Lindsay problem. And it appears that the law in this circuit at this point is that you have to show some kind of prejudice. And how do you do that? Well, you have to show some kind of prejudice if you're just basing it on the statutory, peremptory challenge issue. But what the court in Rivera said was if it can raise to a constitutional due process violation if the court acted arbitrarily or irrationally in granting the Batson claim. And we believe that's what Judge Reel did here. The government was never called upon to give any arguments for why it believed there was purposeful discrimination here, other than the bare fact that some white males were struck. They didn't put anything on the record with regard to the makeup, the racial makeup of the veneer. So we don't know, in fact, what the percentage of the veneer was that was struck. There was no comparative analysis done. There was nothing. What about Lindsay? Lindsay is the Ninth Circuit case. Right. And it does not read Rivera more broadly than that? I'm sorry, Your Honor? It doesn't read Rivera in a way that would reach this case. Well, I don't believe Lindsay was addressing the constitutional issue that we believe is at issue here. We believe that there was a constitutional due process violation, which in Rivera the court did say could occur under certain situations, and we believe this is one of those situations. Well, what exactly is the prejudice? He's saying he doesn't need any. You're arguing he doesn't need any. That's right. We're saying that it's per se reversible if, in fact, there was a constitutional due process violation. I don't believe that he's saying that there's a constitutional due process violation, but it's not a constitutional duty, just as under Batson that still remains the case. And your case for that is Perkett? Well, our case for that is Rivera. And of course, Perkett says, you know, when one gives a race-neutral explanation, it doesn't need to be persuasive. It doesn't need to be plausible. In that case, the strikes were just based on the fact the prosecutor said he didn't like the fact that the jurors had, you know, a beard and straggly hair. That, the Court said, that's sufficient, the race-neutral reason. Here, of course, the defense counsel did in fact give what we believe are race-neutral reasons, and the Court just simply granted to Batson without any further analysis. If the judge thought that the reasons were pretextual, he wouldn't learn anything that would change his mind by letting the government respond to the, quote, reasons that were given? Well, if the Court thought it were pretextual, then perhaps the Court should have said so. The Court didn't say that. We don't know why the Court granted the Batson challenge here. He simply just arbitrarily said they weren't good reasons. They weren't good reasons. It's not clear if that's, if that means that we lose at Step 2 or if he was combining Step 2 and Step 3 or he did the analysis in his head under Step 3 very quickly, even though there was no other evidence presented. We don't know. I really would like to talk about the instructional question. With respect to the permissive inference instruction, first, let me address this. The government has argued that plain error applies here. The defense clearly objected on page 1314 of the excerpts to the instruction that was given and this particular portion of the instruction that was given. So it's not clear to me why the government thinks there was insufficient objection here. So we don't believe plain error applies. The problem with the instruction is that it essentially, it allowed the jury, the judge essentially told the jury, I've already made a decision on this point, that he stole the mail, regardless of any explanation that the defendant may have given. How did he say that the defendant had stolen mail? Well, the instruction was that a jury may infer that the defendant stole an item of mail if a properly addressed and recently mailed item was never received by the addressee and was found in the defendant's possession. The defense didn't say otherwise. The defendant agreed that in fact had taken place. He didn't say may. He didn't say they had to. That's right. He did say may, but he didn't give the additional language which we believe was required that the inference is permitted only where. Why isn't the real problem here that this inference just doesn't apply to this case at all? Because in fact, there's no sense in which this wasn't received because it was, didn't have a chance to be received. It never would have been received at the point that he, that it was found in his possession. So the whole underlying factual basis for this inference is just inapplicable here. Well, that's right. And the defense counsel made that argument, and Judge Reel, again, was just completely dismissive. But what's the consequence of that? I mean, how does it matter? It seems to me that the instruction should never have been given because the facts do not, aren't even there, that are relevant. The reason why this might be a plausible inference, don't apply here. There is no plausible inference. Since the day in which he was found, they never would have gotten the mail. But it may have sent a message to the jury that Judge Reel believed that he, in fact, had stolen the mail. And that's what the inference is. Then the government's argument is, well, there was really no dispute about whether he stole the mail. The question was what he intended to do with it. In other words, they were separating out stealing from theft. And why isn't that accurate given the three criteria for this crime, i.e., one is stealing and the next one is with the intent to keep it temporarily or permanently? So the stealing really didn't matter? I guess part of the problem is when you use the term stole or stealing, that has a certain connotation to a layman. And we don't believe that at that point he had stolen the mail. I mean, that's what he was on trial for, stealing mail. At that point, he had taken the mail and had the intention of returning the mail. But he had not actually stolen it. And this instruction essentially could have led the jury to reasonably believe that he, in fact, had stolen the mail already at that point. He was guilty of theft. Correct. I guess I have two questions. One is what do you see as a difference between element two and element three? Your Honor, honestly, it's not entirely clear, at least when it comes to instructing And as an attorney even, when you use the term stole and the crime is stolen mail, then it's not clear. I mean, it's almost as if step, you know, the third element kind of qualifies the second element. The only question I have is wasn't it just abundantly obvious to the jury what the issue was that they had to decide? And would this instruction really be something that would mislead them? I believe it's something that could certainly lead a layman to be confused as to how to rule, given the arguments from both sides. Yes. He actually, under his theory of the defense, he was caught with his phishing material. Right. He wasn't actually, the phishing line wasn't actually in the mailbox at the time, but he was caught with mail and with the phishing. But he was at the mailbox? He was right outside the mailbox. So he hadn't left yet with the mail? That's correct. So he didn't have a chance to return it had he had a change of heart, assuming he intended anything about the mail? Well, that's exactly right. What he had intended to do was simply continue to phish until he found his Father's Day card. Okay. That was his theory of his defense. Correct. And then drop the mail he had already taken out. The main problem with that being that he had been seen there the night before. Well, certainly one witness, we believe there's some dispute. The description she gave is actually very different from what Mr. Wooden looks like. So we believe that she was not a very credible witness when it came to that. All right, counsel, and everybody agrees that the sentence is wrong. Did you make a request that this be sent back for resentencing to a different judge? We did not make that request. We wouldn't necessarily object if it was sent back to a different judge, but we didn't make that formal request. Did I read? Okay, thank you, counsel. You're over your time, and I'll ask this of the government. Thank you. The government said that. The government said that. Right. I think. Yes. State your name and then let me ask. May it please the Court, Joshua Robbins for the United States. And I, too, will focus initially at least on the bats in question. And although the government's position is that there was, in fact, a bats in violation here, and the Court was right in finding that there was, I'll start initially with the Rivera issue that the Court mentioned in its order last week. Can I just ask you? So the defense did not make a request in its briefing that the case be remanded to a different judge, but nonetheless, the government said in its briefing that it takes no position on that issue. Yes, Your Honor. Okay. We have no objection if that's what the Court thinks is appropriate. All right. So returning back to Rivera, I think what I want to focus on initially is the facts of Rivera, because that's very important in answering this Court's question about what the standard is. And in Rivera, of course, the trial judge granted or raised sua sponte and granted the bats in objection to the defendant's peremptory. The Supreme Court, the U.S. Supreme Court, and the Illinois Supreme Court both found that the trial judge in that case had not stated any basis for his finding of prima facie discrimination at Step 1 of Batson. And, in fact, if you read the decision of the Illinois Supreme Court, it found that he couldn't have found a basis because, in the record, there was no basis for any prima facie finding of discrimination. And yet, despite the trial judge's failings in that case, the U.S. Supreme Court unanimously found that automatic reversal was not warranted. And we think that the facts of that case really control in this case. One thing that I don't understand about the Rivera opinion, and anything that spills over from it, is how would anybody ever prove prejudice? You never would. It would be impossible.  What they said is if you have a good faith misapplication of Batson or any other strike of the peremptory and a qualified jury, it would be difficult to show. Worse than difficult? Impossible? Virtually impossible. I don't know. I can't speculate as to whether there would be a reason. But what I think what it left room for is not what counsel is arguing it did. This line in it that kind of says, well, there wasn't a claim of deliberate bias or arbitrary or irrational conduct, that leaves room for a judicial bias claim, which is a different type of due process structural error that can result in automatic reversal. And that's what the court was preserving in this case. If you look at the transcript of the oral argument in Rivera itself, Justice Ginsburg, who is actually the author of the Rivera opinion, one of the first questions she asks is, was there judicial bias in this case? So I think between that and the good faith discussion in the Rivera opinion itself, I think that's what was meant by this sort of line in there that wasn't really explained. So I was trying to figure out how one might articulate prejudice in this kind of a case. And conceivably, by keeping that juror on, he didn't have the defendant didn't have the opportunity to get a different juror who might hang the jury or be more inclined to, you know, understand the circumstances. I mean, I honestly have been to Nipomo, and it is very different than most of L.A. In fact, I don't even understand why they're still trying to bring jurors down from Nipomo. And I can answer actually one question you had. I believe that the practice is if they're coming down from there for a trial, they're given hotels, and that's how they're able to stay down. They stay down here. Yes. Okay. But more to the point, I understand the Court's question. Actually, what the defense counsel in the trial said was, I want people who are from Englewood and Hawthorne, not just from the greater Los Angeles metropolitan area. I want them from Englewood or Hawthorne, which obviously was not the case for the vast majority of the strikes. And on that point, actually, there was a question in, I think, the defendant's brief about whether or not, what the makeup of the jurors who were not stricken was. There's a document. It's in the record. It wasn't submitted as an excerpt of record, but we can certainly provide it to the Court if you think it would be helpful. And it provides the full names of all the jurors in the pool, and the address is where they're from. And that's obviously last names are one of the ways that ethnicity or race is sometimes determined in these kinds of bats and cases. What that indicates is that, I believe, all the jurors that were not stricken, and they were by and large not from Englewood or Hawthorne, six or ten of six, I'm sorry, as of the time of the Batson Challenge, five of them were Hispanic males, two were Hispanic females, one was an African American female. Of those, only two were from Englewood. And if you look at the same document, it indicates that the rest of the jury pool, there was no one else from Englewood or Hawthorne. So it couldn't have been that defense counsel was trying to get jurors from there because there's no way she could have. Do you agree that there was a, okay, assume that community is a proxy for race or minority status or something. What about, and do you agree that, and his daughter is a sheriff, that that's a legitimate nondiscriminatory reason? If that had been raised initially as a basis, I think this would be a much tougher call. There are two responses to that. One is that that was only raised after the first supposed basis had been rejected, and that, under the case law, makes it sort of inherently suspect. You have this mixed motives analysis that often applies in equal protection cases, and there's a certain question that rises there. There's also a comparative juror analysis problem there, because if you look at ER, I think, 45 and 46, one of the jurors who was not stricken, Angelita L, I believe her last name was Laura, I believe a Hispanic female who had a son who was a correctional officer and actually lived with her, not stricken. So I think that those two reasons make that secondary explanation a bit suspect in itself. Shouldn't the comparison be, though, between the jurors who are from the different area and have relatives that's a law enforcement officer as opposed to separating out the two criteria and comparing? Well, I think you can separate them out. Certainly when the first criteria is itself pretty clearly pretextual or doesn't really pan out, that raises an inference that what is going on is a pretext race and that this secondary explanation that wasn't brought up initially was only brought up as a sort of cover. I don't think you would have to say that you consolidate them at the second step and say, well, it's on the basis of the first criteria. But also, isn't the case law generally the opposite? That is, when a pretextual reason is given, that that raises an inference of pretext even if a non-pretextual reason is also given? Isn't that generally what the rule is? That's what I was trying to say, not quite as well. Yes, that's the inference that is raised. Regardless of the sequence. I mean, quite aside from whether one's primary and one's secondary. But I think it's even stronger when the sequence is as it was in this case. I want to mention a couple other things as well, too, to make sure that we get to them, because our view is even if you think that what the Court's explanation here was inadequate, if you look at the Court's decision last year in Osazua, that had a very similarly minimalist explanation for the basis of step three, and the Court actually found it. To go back to the standard, what is your understanding of what Lindsay overruled and what's left after Lindsay in this circuit? Is it not, does it not pertain to a Batson-like challenge or a constitutional challenge or what? Well, Lindsay didn't actually involve a Batson challenge. It was a, they just miscounted. It was a miscount, right. But it implements Rivera in this circuit, and it says basically Angoni, which is the, was the old automatic precedent. Which was a Batson challenge. Is gone. And that was a Batson challenge? It was a Batson challenge, yes, Your Honor. And that's because it's not structural error. What it found was this is not structural error. The Supreme Court in Rivera essentially found it's not structural error, and that means whether it's a due process violation or not, it's not structural error. I mentioned the judicial bias issue because that is one of the remaining categories of structural error that can call for automatic reversal when you don't look at harmlessness or prejudice. But Rivera itself indicated that, no, this is, these kinds of errors are not, as long as there is a qualified jury that's not challengeable for cause. And that's what was the case in this case. In fact, I've mentioned in this case the jury was largely handpicked by defendant. The government only exercised one peremptory strike here, and the defendant really had his run of it. And that is a strong indication. The jury came back, I think, within about 40 minutes, and the evidence was pretty overwhelmingly strong in this case that What about the inference question, just briefly? I don't understand how that inference was even instruction, facts of this case. It's my understanding that the bedrock requirement for even permissive instruction is that, as applied to the facts of the case, it would be a fair, logical inference. And it doesn't seem to me it would be. Well, I think the best way to characterize the instruction at the end of the day would be that it's redundant because, as you said, it applies to the element two that was used to describe element two of the mail theft. Well, that's what you say, and I thought it was a clever argument, and it may be technically right. But I must say that I didn't get the difference between the stealing and the theft in advance, and why should the jury have? I just mentioned the instruction was actually proposed before the trial, before anyone knew what the defense argument and theory of the case was. It shouldn't have been there. So the question, I mean, do you agree that it shouldn't have been there on the facts? I don't think it added anything particularly. But it was wrong. I mean, it was wrong because, in fact, the reason why it was wrong because there was no sense in which the reason why the people didn't get their mail was because the government took it away as evidence, not because of anything he did. Well, again, I think it was there. And what it usually means is that if you find somebody who has mail in possession, can you infer that they're the one who took it. I think that's how it's usually used. Right. But you couldn't do that here because, in fact, there was no possibility they would have gotten the mail. Well, it couldn't have been. And it couldn't. There wasn't a question here because he said he was the one who took it. I agree that it could have been. Well, you're assuming, though, that that is limited to who took it as opposed to any inference as to intent. And that's why you're assuming that. And I'm saying that's not the way a layperson would ordinarily read it. So the question is would it have been harmful because it would have allowed them to infer something that they couldn't have inferred on the facts of this case, including the knowledge question. And if I could just respond to that. I think I'm out of time. I think what was clear from the arguments, certainly in the case, not just the instructions but the arguments, was that the entire question was whether he was telling the truth about the father's death. I understand that. But it's terms in the word steal. They were told that they could infer that he stole it. And the question is whether they would have understood that that only means took it and doesn't include meant to keep it. Yes. Actually, if you look at the third element of the instruction as it was given, if I can find it here. And what is the difference between the second and third element? Well, the second element is that the defendant stole the letter from the mailbox. And the third element is that at the time the defendant stole the letter. And it uses the word stole in the third element. The defendant intended to deprive the owner temporarily or permanently of its use. Is the definition of steal to take the intent to keep temporarily or permanently? Well, the way that it's constructed in the instruction, it really doesn't because you can steal it without that intent. What does stealing mean? Stealing, I mean, my understanding of stealing, yes, often is that it was somebody who's taking something with bad intent. I agree with that. That's the way that the model instruction was written. Perhaps I think there is an argument for rewriting it to use the term take, unlawfully take, or to take the letter from the mailbox. I mean, what isn't the actual intent of this inference in the situations in which it applies to include the intent element? I mean, isn't that what is meant to be covered by it? If you had somebody who had it in their house at a time when the people were actually supposed to have gotten it, wouldn't the government think that that inference covered everything, not just did they take it? I think that the instruction was this language was originally developed in cases many of the cases that the defendant cited in his brief actually having to do with possession. You're found in possession of stolen goods, which is a separate count actually was in this case. And if you were in possession of it and... Well, for example, though, I know from other cases there's a robbery inference that's sometimes given, which is, you know, if you have the car and it belonged to somebody else, there's an inference that you stole it. And stole in that instance usually doesn't mean includes meant to keep it. Yes, Your Honor. I think, well, I'm not familiar with the particular robbery instruction you're talking about, so I'm not sure I can respond in any coherent way. I just, I do think that as it was the standard here, which is whether the jury was misled, I don't think it could possibly have been misled based on the nature of the argument. I don't think I was misled. In terms of your theory, which I think, you know, may accord with the way the instruction is structured, but not with the ordinary use of language. I understand, Your Honor. I think in hindsight it would have been just as good or perhaps better not to have added that additional instruction. In hindsight it might have been better just to charge with possession. Well, I mean, we think, we certainly think that he did steal the mail and that he... Well, but he never had a chance to take it, I mean, to really get away with it. So, I mean, he was sort of caught in midstream of the activity. I think the jury clearly didn't accept his account of what he was actually doing, and I think that the evidence was pretty strong on that point. All right. Well, we've gone over on this. Are there any questions? Yes, please. Go ahead. I just want to go back for a real quick second to the Batson issue. Does the fact that the judge said that they were not good reasons make a difference? I mean, that's not the test. They could be very bad reasons, but being race-neutral, it wouldn't be a Batson problem. I do want to add a response to that. The Court's approach in U.S. v. Alanis really answers the question of what happens if the Step 3 analysis is inadequate. The Court can do its own analysis of Batson based on the record and fill in the gaps there, which is what it's done in Alanis, it did in Kessler v. Cambra, a number of cases. And I'd suggest even if you think that the reason that he gave was not by itself a proper reason, even if you think it's worse than what happened in Osazua, that would be the proper approach here, and there wouldn't even be clear error, let alone the defense. The reason who gave? I mean, I thought the general rule is that we do not add to the reasons the prosecutor gave here. You're talking about the judge? Is that what you're talking about? The judge. Not the defense counsel, the judge. You're referring to the rule that you can't make up a rationale for the defense counsel that they didn't provide themselves for the beginning of their intent. And now I'm talking about when the judge hasn't provided an adequate reason, you can still create one of your own based on the record in this case. And, again, if you do think that that document I mentioned would be relevant, I can certainly provide that to the Court as a supplement. All right. Thank you. We'll let you know, counsel. Yes, Your Honor. U.S. v. William is submitted.
judges: Whyte, Wardlaw, Berzon